SOUTHERN PACIFIC CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CENTRAL PACIFIC RAILWAY CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SOUTHERN PACIFIC RAILROAD CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 7718, 18333, 18337.    Promulgated December 30, 1930.

*Charles L. Minor, Esq.*, for the petitioners.
*W. Frank Gibbs, Esq.*, for the respondent.

## OPINION.

STERNHAGEN: Docket No. 7718 involves a deficiency of $91.16 in income tax on interest paid in 1921 by petitioner to holders of its tax-free covenant bonds. Docket Nos. 18333 and 18337 involve similar deficiencies of $382.58 and of $320.40, respectively, for 1923. The question raised is whether taxes payable by an obligor on tax-free covenant bonds held by nonresident aliens are, under certain stipulated circumstances, measured by the tax rate effective when the interest coupons mature, or the rate effective when they are paid.

The cases are submitted upon the following stipulation:

(1) Petitioner, Southern Pacific Company, is a Kentucky corporation; petitioner, Central Pacific Railway Company, is a Utah corporation; petitioner, Southern Pacific Railroad Company, is a corporation of the States of California, Arizona, and New Mexico. Each of said petitioners has offices at No. 165 Broadway, New York, New York.

(2) The said petitioners, at the times hereinafter mentioned, had outstanding in the hands of the public certain bonds containing a convenant as follows:

"Both principal and interest are payable without deduction for any tax or taxes which the debtor company may be required to pay or retain therefrom under any present or future law of the United States or of any state, territory, county, or municipality therein."

(3) Petitioner, SOUTHERN PACIFIC COMPANY, in 1921, paid to various non-resident alien holders of its said tax-free bonds interest items aggregating $4,888.00, which had matured during the years 1914, 1915, 1916 and 1917, the coupons not having been presented when due because of conditions arising out of the World War. The above amount of interest items was reported to the Commissioner of Internal Revenue by said petitioner upon Treasury Department form 1012, filed monthly during the year 1921. In its Annual Return of Income to be Paid at Source on Interest Derived from Bonds (Treasury form 1013) for 1921, petitioner Southern Pacific Company reported a tax, constructively but not actually withheld, at the withholding rate in effect during the period the several items of interest became due and payable, i. e. one per cent on the items which matured and were payable between the dates July 1, 1916 and January 1, 1917, no percentage being reported on form 1013 as tax withheld on the portion representing interest items which matured prior to July 1, 1916, the effective date of withholding at the source the normal tax of one per cent from income paid to nonresident aliens from corporate obligations under Section 2 of the Act of October 3, 1913. Notice of a tax deficiency, in the amount of $91.16, was mailed to said petitioner on August 29, 1925.

(4) Petitioner, CENTRAL PACIFIC RAILWAY COMPANY, in 1923, paid to various nonresident alien holders of its said tax-free covenant bonds, interest aggregating $19,257.50 which had matured during the years 1914, 1915 and 1916, the coupons not having been presented when due because of conditions arising out of the World War. The above amount of interest items was reported to the Commissioner of Internal Revenue on monthly forms 1012 filed during the year 1923. In its annual return (form 1013) for 1923, petitioner Central Pacific Railway Company reported a tax, constructively but not actually withheld, at the withholding rate in effect during the period the several items of interest became due and payable, i. e., one per cent on the items which matured and were payable between July 1, 1916 and January 1, 1917, no percentage being

reported on form 1013 as tax withheld on the portion representing interest items which matured prior to July 1, 1916, the effective date of withholding at the source the normal tax of one per cent from income paid to nonresident aliens from corporate obligations under Section 2 of the Act of October 3, 1913. Notice of a deficiency, in the amount of $382.58, was mailed to said petitioner on May 21, 1926.

(5) Petitioner, SOUTHERN PACIFIC RAILROAD COMPANY, in 1923, paid to various nonresident alien holders of its said tax-free covenant bonds, interest items aggregating $17,300.00 which had matured at various dates prior to December 31, 1916, the coupons not having been presented when due because of conditions arising out of the World War. The above amount of interest was reported on monthly forms 1012, filed during the year 1923. In its annual return (form 1013) for 1923, petitioner Southern Pacific Railroad Company reported a tax, constructively but not actually withheld, at the withholding rate in effect during the period the several items of interest became due and payable, i. e. one per cent on the items which matured and were payable between July 1, 1916 and January 1, 1917, no percentage being reported on form 1013 as tax withheld on the portion representing interest items which matured prior to July 1, 1916, the effective date of withholding at the source the normal tax of one per cent from income paid to nonresident aliens from corporate obligations under Section 2 of the Act of October 3, 1913. Notice of a deficiency, in the amount of $320.40, less $3.20 deduction agreed to, leaving balance of $317.20, was mailed to said petitioner on May 18, 1926.

(6) The additional assessments in the case of each petitioner resulted from a determination of the Commissioner of Internal Revenue that a tax was required to be withheld from the entire amount of interest payments made to said nonresident alien bondholders at the withholding rate in effect for the years during which the interest was paid, i. e. two per cent in 1921 and 1923, without regard to the rate in effect during the periods in which the interest coupons became due and payable. The Commissioner of Internal Revenue, in determining the amount of taxes involved in these proceedings increased the tax rate as paid by petitioners from one per cent to two per cent on the interest items maturing between July 1, 1916 and December 31, 1916, and on interest items maturing prior to July 1, 1916 (upon which petitioners had paid no tax) the Commissioner asserted a tax at the rate of two per cent.

(7) Upon the dates said bond interest became due and payable and at all times thereafter petitioners had funds available for the payment thereof and that the coupons would have been paid at maturity if they have been presented.

(8) The pleadings in the three cases shall be deemed amended in conformity with the facts herein stipulated.

The following payments in full of the deficiencies here involved were made by petitioners on November 11, 1929:

|  | Total | Deficiency | Interest |
|---|---|---|---|
| Southern Pacific Co | $131.43 | $91.16 | $40.27 |
| Central Pacific Railway Co | 505.69 | 382.58 | 123.11 |
| Southern Pacific Railroad Co | 422.85 | 320.40 | 102.45 |

The proceedings were dismissed for want of jurisdiction in *Southern Pacific Co.*, 17 B. T. A. 410. In due time the orders of dismissal were vacated pending further consideration of the question of juris-

diction.  Subsequently it was held in *Myra Furst*, 19 B. T. A. 471, that jurisdiction in such cases was not lacking and the opinion in *Southern Pacific Co.*, *supra*, was expressly overruled.  The case is now submitted on the merits, the issue being whether the petitioners in 1921 and 1923 correctly computed and paid the tax payable at source on the amounts paid by them in the taxable years here in question as interest for the period of 1913 to 1917.

*Docket No. 7718.*  Before considering the merits of petitioners' liability, it is necessary to revert to the problem of jurisdiction in so far as it concerns Docket No. 7718.  No consideration has heretofore been given to the fact that in that docket the notice of deficiency was mailed, the proceeding instituted, and issue joined in 1925 before the enactment or effective date of the Revenue Act of 1926.  It is therefore governed by the Revenue Act of 1924, unless there is a provision of the later act which affects it.

As set forth in the earlier opinion, the jurisdiction of the Board under the 1924 Act was confined to proceedings instituted by " taxpayers " in respect of statutory " deficiencies," and it was found, on the authority of *Union Pacific R. R. Co. v. Bowers*, 28 Fed. (2d) 370; 33 Fed. (2d) 102, that these petitioners were not " taxpayers," and therefore the proceedings, like many others attempted to be brought before the Board by unauthorized persons, were not within the Board's jurisdiction.  *Fifth Third Union Trust Co., Trustee, et al.*, 20 B T. A. 88; *Gideon-Anderson Co.*, 18 B. T. A. 329, and cases there cited.  In *Myra Furst*, 19 B. T. A. 471, the notice to petitioner was mailed in 1927 after the Revenue Act of 1926 became effective.  Consideration was given to section 283 (a) of that statute, by virtue of which it was said that " notice sent to any person liable for a tax is to be considered equivalent to a notice of deficiency mailed to a taxpayer," and since by section 221 (c) of both the 1924 and 1926 Acts the withholding agent or obligor on tax-free covenant bonds is expressly made " liable for the tax," it was held that the proceeding was within the jurisdiction of the Board.  Thus, the existence of jurisdiction was based squarely on the proposition that by section 283 (a) of the 1926 Act a notice of liability to the " person liable for the tax" was equally effective to establish jurisdiction as a notice of deficiency to a " taxpayer."

Manifestly, this reasoning only extends as far as its basis.  Section 283 (a) of the 1926 Act is expressly limited to notices given by the Commissioner " after the enactment of this Act," namely February 26, 1926.  There is no provision in the 1924 Act similar to section 283 (a) of the 1926 Act and no reason anywhere for construing the 1924 Act as if it contained such a provision.  By reading the entire section 283 of the 1926 Act, it is apparent that it purported to describe with

exactitude the classes of situations over which the Board should have jurisdiction notwithstanding they had sprung from preexisting controversies. But none of these carefully expressed descriptions covers a case like this, where, before the enactment of the act a person not a taxpayer (although liable for the tax) had received notice, not of a statutory deficiency, but of a collateral liability, and, therefore, not a notice under section 274, no assessment having yet been made, and had attempted to appeal to the Board. Generally speaking, section 283 prevented the lapse of jurisdiction already existing, but it did not purport to validate proceedings presumptuously but invalidly begun.

The proceeding bearing Docket No. 7718 will be dismissed for want of jurisdiction.

*Docket Nos. 18333 and 18337.* The petitioners contend that, although not paid to the bondholders until the years in question, the amounts of interest were due, payable, and available during the earlier years when either no withholding or payment at the source was required or the tax payable at the source was no more than 1 per cent. They contend that the interest not merely accrued, but was unqualifiedly subject to demand, and hence constructively received by the bondholders at that time and subject to the then prevailing tax and the provisions as to withholding and payment at the source.

This argument must be predicated on the view that the obligation of the withholding agent or obligor is coincident with that of the obligee recipient, and that only when the principal amount of tax is due from the obligee can the obligor be held accountable for the percentage required to be withheld and paid by him. Whether this presupposed view is sound would require some consideration of the broad intendment of the statute and the scope and purpose of the system of collection which the withholding provisions establish. For, since the withholding agent or bond obligor is not a " taxpayer," *Union Pacific R. R. Co.* v. *Bowers,* 33 Fed. (2d) 102, the nature of his obligation for tax is different and possibly the time and occasion of his liability may be different. We, therefore, leave undecided this hypothesis upon which petitioners' argument is based, and assume for present purposes that it is sound. If it is not true that the bondholders were taxable in 1914 to 1917, then petitioners' argument fails. If it is true that the bondholders were taxable in 1914 to 1917, then there might still be other considerations to apply to the determination of the question of petitioners' liability in 1923.

But even if petitioners were correct in tying up their liability with that of the bondholders, and even if the income and resulting tax were returnable and payable in the earlier years, it would then be necessary to hold as to such income that, to the extent it was taxable under the Revenue Act of 1913, the Board was without jurisdiction

and to dismiss the petitioners *pro tanto*. For it is only in respect of taxes imposed by the Revenue Act of 1916 and subsequent acts that the Board has jurisdiction. *David B. Mills*, 1 B. T. A. 199; *Charles J. Kinzel*, 1 B. T. A. 719; *Herald-Despatch Co.*, 4 B. T. A. 1096, 1102; *Navarro Lumber Co.*, 10 B. T. A. 690, 696; *Lancaster Lens Co.*, 10 B. T. A. 1153, 1155; *Uncasville Mfg. Co.*, 19 B. T. A. 920, 926.

At the time that the interest was due, these petitioners did not treat it as paid either actually or constructively, and they made no return of tax at the source on any such theory. Nor did the bondholding taxpayers submit themselves to tax upon that theory. This omission is a substantial matter when those who availed themselves of it and thus deprived the Government of the revenue which it might otherwise have collected now seek to avoid the natural results of the omission and seek justification under a doctrine at variance with the facts. The doctrine of constructive receipt is not a doctrine with clearly defined attributes. It is a conceptual device the primary function of which is to bring about a fair and reasonable application of the income tax. Its application may vary with varying circumstances and its ordinary tests may fail in an extraordinary situation. For this reason, the precedents cited by petitioners in which income has been held taxable because constructively received are not determinative of the decision here.[1]

The petitioners did not and were not called upon to pay the interest until 1923, and the nonresident aliens did not and for all that appears could not receive the interest until then. Indeed we might construe the stipulated " conditions arising out of the World War " as meaning an effective obstacle to the presentation of coupons or demand. This would be consistent with *United States* v. *White Dental Mfg. Co.*, 274 U. S. 398, and *Jacob F. Brown*, 18 B. T. A. 859, 870, in which war conditions which obstructed collection were held sufficient to substantiate a loss. In face of such conditions, which, so far as we know, were enough to effectually prevent the bondholders from actually receiving their interest, it may be seriously doubted whether it could be held as to them that they were nevertheless taxable upon such interest as if it had been actually received.

But that is an academic question, since the bondholders have not raised it and the Commissioner has not attempted so to tax them. These petitioners must rest not only on the bondholders' constructive receipt, but on their own actual or constructive payment of the interest to the bondholders, or, more properly, of the tax payable by them at the source. Since constructive receipt is only a legal concept, at

---

[1] *John A. Brander*, 3 B. T. A. 231; *Archer L. Kent*, 6 B. T. A. 614; *Ella O. Loose, Executrix*, 15 B. T. A. 169; *Albert J. Sullivan*, 16 B. T. A. 1347.

variance with fact, and recognized only for a limited purpose, it does not necessarily follow that every time a receipt is or would be constructively attributed to a recipient a constructive payment must be attributed to the obligor. There are cases where a stockholder or officer has been held to have constructively received income from a corporation although the corporation has been denied deduction of the hypothetical payment. This is plain where one is on the accrual basis and the other on the cash basis, but it may also be true where both are on the cash basis. The exigencies of taxation are not in accord with the rhythm of pure logic.

Enough has been said to demonstrate the fallacy of petitioners' argument. But even if the argument is tested by its own terms, it fails. The petitioners judge the constructive receipt of the alien bondholders by the fact that, so far as petitioners were concerned, they were able to and would have fulfilled any demand made for the interest when due; hence they say the payment was at all times in the voluntary control of the bondholders and must be treated as constructively received by them. Petitioners cite cases in which the obligee was in a position conveniently to make demand. But the readiness of the obligor to pay may not always be the only condition to enable the obligee to receive, and in this case there were apparently others. Conditions arising out of the World War were apparently such as to prevent the bondholders from making the demand or receiving payment. If they were enemy aliens or subject to blockade, this is reasonably clear, and petitioners have not shown and we have no reason to assume that they were not such aliens. As such, their disability to receive was far greater than that of a bondholder too ill to cut or cash his coupons, as in *Ella C. Loose, Executrix*, 15 B. T. A. 169. This case is also palpably different from those where by reason of the express statutory provision, dividends are taxable to stockholders when declared and made unqualifiedly subject to their demand. *Commissioner* v. *Bingham*, 35 Fed. (2d) 503, reversing 8 B. T. A. 603. It also involves different considerations from those in *Plant* v. *Walsh*, 280 Fed. 722, and *United States* v. *Guinzberg*, 278 Fed. 363, where income was held to have accrued before March 1, 1913, and therefore to be free from tax.

We are of opinion that there is no merit in petitioners' position. When the interest was actually paid to and received by the bondholders they received income taxable at the rate then effective, and the petitioners were under the duty of paying so much thereof as by the statute then in effect they were required to withhold and pay. They had no right to decide that the amount was subject to an earlier tax, even although because the earlier rate was lower the taxpayers

might be assumed to prefer it so. If the earlier rate had been higher, the error of petitioners' view would be still more manifest.

Reviewed by the Board.

> *The proceeding Docket No. 7718 will be dismissed for lack of jurisdiction. Judgment in Docket Nos. 18333 and 18337 will be entered in accordance with this opinion, under Rule 50.*

MATTHEWS did not participate in the consideration of this report.

PHILLIPS, VAN FOSSAN, and BLACK concur in the result only.